IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
v. )   CRIMINAL NO. 05-10 ERIE
)
PATRICK NELSEN KISER )

SENTENCING

Proceedings held before the HONORABLE SEAN J. McLAUGHLIN, U.S. District Judge, in Courtroom C, U.S. Courthouse, Erie, Pennsylvania, on Monday, November 7, 2005.

APPEARANCES:

CHRISTIAN A. TRABOLD, Assistant United States Attorney, appearing on behalf of the Government.

ELLIOT J. SEGEL, Esquire, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

## P R O C E E D I N G S

(Whereupon, the Sentencing proceedings began at 1:28 p.m., on Monday, November 7, 2005, in Courtroom C.)

THE COURT: Good afternoon. This is the time that we've set for sentencing in the case of United States versus Patrick Nelsen Kiser, at Criminal No. 05-10 Erie. We've got a couple preliminary matters to get out of the way first.

The government has filed an objection to the presentence report. Essentially, contending that pursuant to United States Sentencing Guideline Section 2K1.4(a)(1), Mr. Kiser's base offense level is, it should be 24, because the conduct at issue involved the "destruction or attempted destruction" of a "place of public use." See generally Application Note 1. Since there is a mandatory minimum that is in play here, the exercise is somewhat academic. But, nevertheless, it's important I think we get it right.

Are you in agreement with that, Mr. Segel?

MR. SEGEL: Yes, we are. I think the enhancement was due to the public place provision, we have no disagreement with that.

THE COURT: All right. Let me make the following findings then. The total offense level applicable to this case is a 23. With a criminal history category of I. Statutory

1  provision as to custody not less than 5 years to 20 years
2  imprisonment.  The guideline provision 60 months.  Statutory
3  provision as to probation ineligible.  Also ineligible under
4  the guidelines.  Statutory provision as to supervised release
5  not more than three years.  Guideline provision at least two
6  years but not more than three years.  The statutory provision
7  as to a fine $250,000, or twice the pecuniary gain or loss.
8  The guideline provision is $10,000 to $100,000.  Restitution
9  applies both with respect to the statutory and the guideline
10 provision, in the amount of $420,935.91.  And a special
11 assessment of $100 applies with respect to both the statutory
12 and the guideline provisions.
13         The record should also reflect that the defendant
14 has filed a position with respect to sentencing -- it is styled
15 position with respect to presentence report.  It's my
16 understanding, though, Mr. Segel, that none of those objections
17 implicate the guideline range or the sentencing range at all,
18 is that correct?
19         MR. SEGEL:  That's correct, judge.
20         THE COURT:  Simply for the record, the mother's name
21 is Melinda not Melissa.
22         And, second, that the defendant's, this is from the
23 pleading, second, the mental health inpatient treatment period
24 occurred from January 30, 2001 to February 2, 2001.
25         And, third, the defendant indicates in his papers

4

1  that the defendant quit using Fentanyl, F-e-n-t-a-n-y-l, in
2  February of 2003, at the time of his initial treatment at the
3  Esper Treatment Center, rather than six or seven months prior
4  to the Indictment in March of 2005. All right, that's noted
5  for the record.
6          Mr. Segel, do you have anything you want to say?
7          MR. SEGEL: I'll be brief, judge, because, as you
8  noted, the sentencing guideline calculations fall a bit below
9  the statutory mandatory minimum prison term in this case.
10 I know the court's aware of the Booker case --
11         THE COURT: Booker gives me running room, but it
12 doesn't give me that much running room.
13         MR. SEGEL: Exactly. I tried to give you a head
14 start, but we understand it doesn't, judge. Basically, our
15 position today is that there is no circumstances which would
16 warrant imposition of a sentence beyond the 60-month mandatory
17 minimum. Particularly, because the guideline range but for
18 that, would call for less than that.
19         The facts, as accepted in the presentence report,
20 are that Mr. Kiser, he's still a young man, he has struggled
21 often times, not very well, since his adolescence with
22 substance abuse. There's been some mental health issues.
23         There have been various attempts in treatment
24 programs, mostly short-term. The one long-term was the Esper
25 Medical Clinic, and that's more of a methadone drop-off

1  facility, rather than an actual rehab or treatment facility,
2  judge.  I bring this up just for sentencing purposes and that
3  in the hopes that in the Federal Bureau of Prison system he
4  will be able to take advantage of drug counseling programs that
5  are offered there.
6          He has a family that is extremely supportive.  Many
7  members are here today, including a three-year-old daughter,
8  the mother of whom is here in court today, she has maintained
9  her relationship with Patrick.
10         He has no prior criminal record.  His comparative
11 culpability, the offense obviously is serious and that's
12 reflected in the mandatory minimum provision provided by the
13 statute.  But I think the government has been in agreement with
14 our position from the beginning that in terms of the pecking
15 order here, Chris Barr was the main actor and the primary mover
16 and planner on this incident.
17         Patrick made a big mistake, I say big mistake with
18 capital letters.  And I've talked to him about this, his
19 inability to say no to someone.  When someone wants him to do
20 something he knows is not right, that's what happened in this
21 case.
22         What I didn't know until we got discovery from the
23 government was that apparently Mr. Barr had solicited other
24 people to help him with this venture.  And those people had the
25 good sense to say no.  Patrick didn't.  But for purposes of his

1  involvement, he's definitely responsible, definitely culpable.
2  But, again, I think everybody is in agreement here he wasn't
3  the prime actor, prime planner and the prime mover.
4       The other thing that I think it is important to
5  note, judge, even though it really doesn't affect the mandatory
6  minimum imposition in the Sentencing Guidelines, is that
7  Patrick cooperated with the government from the start.
8       Even well before the Indictment, he met with Agent
9  Farabaugh, I think at the Warren County Sheriff's Office, and
10 provided an audiotaped statement implicating himself and Mr.
11 Barr in the incident.  After he was indicted, he met again,
12 this time Mr. Trabold was present.  He provided another
13 statement.
14      The plan was that if Mr. Barr was going to plead not
15 guilty and go to trial, Patrick was going to testify against
16 him.  That didn't happen, as you know, judge.  The government
17 didn't need the assistance of Mr. Kiser, so there is no room
18 for a 5K substantial assistance motion here.  But I just bring
19 it to the court's attention as further support of our position,
20 which is that we don't believe anything beyond the 60-month
21 mandatory minimum sentence would be warranted in this case.
22      THE COURT:  In any event, there's no motion from the
23 government to that effect, there is no upward departure motion?
24      MR. SEGEL:  Right.  With that, judge, there's really
25 nothing more to say.

1    THE COURT:  Is there a recommendation with respect
2 to placement?
3    MR. SEGEL:  That's what I was getting to.  I've
4 explained to Patrick we could ask the court for a
5 recommendation, that's all it would be.  His family lives in
6 Warren.  Obviously, the closest Federal Bureau of Prisons
7 institution would be McKean.  And we hope the Federal Bureau of
8 Prisons would take that into consideration and the court would
9 make that recommendation for purposes of this sentence.
10    THE COURT:  I will do that.
11    MR. SEGEL:  Thank you.
12    THE COURT:  Mr. Trabold.  Actually, excuse me,
13 Mr. Trabold, let me inquire if the defendant has something to
14 say.  Mr. Kiser, is there something you'd like to say?
15    THE DEFENDANT:  Yeah.
16    THE COURT:  Come on up to the podium.
17    THE DEFENDANT:  I just want to publicly apologize
18 for my involvement in this case, and tell you that I'm looking
19 forward to doing right when I do get out.  That's all.
20    THE COURT:  All right, thank you, Mr. Kiser.
21 Mr. Trabold.
22    MR. TRABOLD:  Your Honor, this case is remarkable to
23 me for several different reasons as it relates to Mr. Kiser.
24 First of all, obviously, the conduct, as we discussed in the
25 previous sentencing, is extremely serious, and it's conduct

1  that could have endangered the lives of untold numbers of
2  people.
3          Having said that, obviously, I want the court to
4  place an emphasis on that.  I very seldom have seen a defendant
5  situated like Mr. Kiser begin his unfortunate foray into the
6  criminal justice system with such a serious crime.  I mean,
7  Mr. Kiser has really no criminal history of any kind
8  whatsoever, other than a very minor previous incident.  And to
9  begin your conduct in such a way as this is really --
10         THE COURT:  It's aberrational.
11         MR. TRABOLD:  Yes, it's very aberrational, highly
12 unusual.  I hope that your sentence today will bring home to
13 him the necessity that he has to abide by the requirements of
14 the criminal justice system.  Because not only does it impact
15 upon himself, it now impacts on his child and on his entire
16 family, when he's going to be gone for five years.  I hope that
17 that is what's going to happen.
18         My contact with him causes me to conclude that this
19 is in fact something that he was caught up in that kind of just
20 got away from him.  As opposed to Mr. Barr, I think it's
21 definitely accurate that Mr. Barr was the ringleader of this
22 case without question.  However, that being said, Mr. Kiser
23 obviously undertook enough acts on himself to be liable for the
24 crimes that occurred here.  And the crimes that occurred here,
25 as I said, are extremely serious.

1          I just hope that by your sentence today he gets the
2 message that once and for all that he cannot continue to engage
3 in this kind of conduct.  Because all that is going to happen
4 in the future are sentences that are much higher than the
5 sentence that you're going to impose here today.
6          THE COURT:  All right.
7          MR. TRABOLD:  Thank you.
8          THE COURT:  Thank you, Mr. Trabold.
9          Mr. Kiser, could you stand up, please.
10         Pursuant to the Sentencing Reform Act -- let me
11 first preface this by saying that it goes without saying that
12 I'm well aware in a post Booker world the advisory guideline
13 sentence ranges are now precisely that, advisory.  I'm also
14 well aware of what I'm dealing with here in this case, a
15 statutory minimum.
16         Pursuant to the Sentencing Reform Act of 1984, it is
17 the judgment of the court that the defendant, Patrick Nelsen
18 Kiser, is hereby committed to the custody of the Bureau of
19 Prisons to be imprisoned for a term of 60 months.
20         It is further ordered that the defendant shall make
21 restitution to the following persons in the following amounts:
22         Traveler's Insurance, $305,462.12.
23         Peerless Insurance, $77,314.63.
24         Erie Insurance Group, $1,209.72.
25         Deborah Heist-Hanson, $36,949.44.

Case 1:05-cr-00010-SJM   Document 51   Filed 11/30/2007   Page 10 of 14

10

```
 1           Any payment that is not made in full will be divided
 2   proportionately among the persons named.
 3           The defendant shall make restitution jointly and
 4   severally with his co-defendant, Christopher James Barr.
 5           The defendant shall initially make payments on
 6   restitution through the Bureau of Prisons inmate financial
 7   responsibility program through which 50 percent of his prison
 8   salary shall be applied to the restitution.  Any restitution
 9   balance remaining at the commencement of supervised release
10   shall be paid as a condition of supervised release.
11           The court finds that the defendant does not have the
12   ability to pay interest on restitution, therefore, interest is
13   waived.
14           Upon release from imprisonment, the defendant shall
15   be placed on supervised release for a term of three years.
16           Within 72 hours of release from the custody of the
17   Bureau of Prisons, the defendant shall report in person to the
18   probation office in the district to which this defendant is
19   released.  While on supervised release, the defendant shall not
20   commit another federal, state, or local crime, shall comply
21   with the standard conditions of supervision recommended by the
22   Sentencing Commission and adopted by this court, and shall
23   comply with following additional conditions.
24           One.  The defendant shall not illegally possess a
25   controlled substance.
```

1          Two.  The defendant shall not possess a firearm or
2  destructive device.
3          Three.  The defendant shall pay any remaining
4  restitution balance through monthly installments, but not less
5  than 10 percent of his gross monthly income.
6          Four.  The defendant shall provide the probation
7  officer with access to any requested financial information.
8          Five.  The defendant shall not incur new credit card
9  charges or open additional lines of credit without the approval
10 of the probation officer.
11         Six.  The defendant shall participate in a program
12 of testing and, if necessary, treatment for substance abuse as
13 directed by the probation officer, until such time as the
14 defendant is released from the program by the probation
15 officer.
16         Further, the defendant shall be required to
17 contribute to the costs of services for any such treatment in
18 an amount determined by the probation officer but not to exceed
19 the actual cost.
20         The defendant shall submit to one drug urinalysis
21 within 15 days after being placed on supervision, and at least
22 two periodic tests thereafter.
23         The defendant shall participate in a mental health
24 treatment program as directed by the probation officer, until
25 such time as the defendant is released from the program by the

12

1  probation officer.
2          The defendant shall cooperate in the collection of
3  DNA as directed by the probation officer.
4          It is further ordered that the defendant shall pay
5  to the United States a special assessment of $100, which shall
6  be paid to the United States District Court Clerk
7  forthwith.
8          I find this defendant does not have the ability to
9  pay a fine and, therefore, I will waive a fine in this case.
10         Do you understand, Mr. Kiser, that you are entitled
11 to appeal this sentence which I imposed this afternoon, but if
12 you choose to do so, you must do so within 10 days; do you
13 understand that?
14         THE DEFENDANT:  Yes.
15         THE COURT:  Is there anything further then, Mr.
16 Segel?
17         MR. SEGEL:  No, your Honor.
18         THE COURT:  All right, we're adjourned.
19         (Recess from 1:43 p.m.; until 1:47 p.m.)
20         THE COURT:  All right, Mr. Trabold.
21         MR. TRABOLD:  Your Honor, the government would move
22 to dismiss Counts One and Three.
23         THE COURT:  That's granted.
24         MR. TRABOLD:  Thank you, your Honor.
25         MR. SEGEL:  Thank you, your Honor.

1            THE COURT:  These proceedings are adjourned.
2
3            (Whereupon, at 1:48 p.m., the Sentencing proceedings
4  were concluded.)
5
6                              - - -

14

## C E R T I F I C A T E

1
2
3
4
5      I, Ronald J. Bench, certify that the foregoing is a
6  correct transcript from the record of proceedings in the
7  above-entitled matter.
8
9
10
11
12  _____
13  Ronald J. Bench